Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>GREIZA MADELINE ROSADO BÁEZ<br><br>Apelante | KLAN202400460 | Apelación Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>D LE2023G0191<br><br>Sobre:<br>Art. 2.8 Ley 54 (1989) grave |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

El 8 de mayo del año en curso, Greiza Madeline Rosado Báez (en adelante, Rosado Báez o la apelante) presentó ante este Tribunal de Apelaciones una *Apelación Criminal* mediante la cual solicita la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario) en el caso de epígrafe. Mediante la misma, el 26 de abril de 2024, el foro primario encontró a la apelante culpable de infracción al Artículo 2.8 de la Ley 54 del 15 de agosto de 1989, (en adelante Ley 54).[1]

Estudiado el legajo apelativo, los argumentos levantados por las partes, la transcripción de la grabación del juicio en su fondo y los autos

---

[1] El referido artículo lee:

Cualquier violación a sabiendas de una orden de protección expedida, de conformidad con esta Ley, será castigada como delito grave de tercer grado en su mitad inferior, disponiéndose que los tribunales vendrán obligados a imponer supervisión electrónica, de concederse cualquier tipo de sentencia suspendida.

No obstante, lo dispuesto por la Regla 11 de las Reglas de Procedimiento Criminal, según enmendada, aunque no mediare una orden a esos efectos, todo oficial del orden público deberá efectuar un arresto, si se le presenta una orden de protección expedida al amparo de esta Ley o de una ley similar, contra la persona a ser arrestada; o si determina que existe dicha orden mediante comunicación con las autoridades pertinentes, el patrono de la peticionaria o la compañía de seguridad que tenga a cargo el control de acceso donde reside la peticionaria y tienen motivos fundados para creer que se han violado las disposiciones del mismo. 8 LPRA, Sec. 628.

Número Identificador

SEN2024 _____

originales levantados ante nuestra consideración en calidad de préstamo, resolvemos **confirmar** el dictamen apelado. Veamos.

**-I-**

El 4 de agosto de 2023 el Ministerio Público presentó *Acusación* contra la apelante al amparo del Artículo 2.8 de la Ley 54. Específicamente, allí se alegó que el 8 de julio de 2023, aproximadamente a la 1:00 pm en la jurisdicción de Bayamón, Puerto Rico, la apelante:

> "ilegal, voluntaria, a propósito y criminalmente violó lo dispuesto en la Orden de Protección Número OPA-2022-028985 emitida por el Hon. Juez Rafael J. Parés Quiñones, del Tribunal de Primera Instancia, Sala de Bayamón, vigente desde el 1 de diciembre de 2022 hasta el 1 de octubre de 2023, a favor del Sr. Dimitri José Cordero Mojica, con quien sostuvo una relación consensual y no procrearon hijos. Consistente, en que la sospechosa el día 8 de julio de 2023 le envió 3 mensajes al perjudicado a través de la aplicación de ATH Móvil del número telefónico (787) 410-4566, a sabiendas y con el conocimiento de que le estaba prohibida por la orden de protección emitida por el tribunal, violando así la misma sin causa legal que la justificara."

Tras varios eventos procesales relacionados con el descubrimiento de prueba y luego de resolverse una solicitud de supresión de evidencia y petición de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal presentada por la apelante, el Juicio en el caso fue celebrado por Tribunal de Derecho el 18 de enero de 2024.[2] Durante este, declaró el Sr. Dimitri Cordero, perjudicado y el Agente Carlos Alberto Pérez Albino. Recibida la prueba, el Tribunal encontró a la apelante culpable de infracción al Artículo 2.8 de la Ley 54. El 26 de abril de 2024, luego de varios intentos, se celebró la audiencia para dictar sentencia. Allí, tras exponer que no existía impedimento para ello, dictó sentencia en contra de la apelante por el término de 8 años de prisión. También, suspendió su efecto para que el término fuera cumplido en una sentencia suspendida supervisada.

---

[2] Surge de los autos que mediante *Resolución* emitida el 26 de octubre de 2023 por el Hon. Juez Rafael A. Villafañe Riera, declaró No Ha Lugar la supresión y desestimación solicitada.

En desacuerdo con la sentencia dictada, la apelante instó el recurso de apelación de epígrafe. En este, señaló la comisión de los 10 errores que a continuación transcribimos.

1. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al encontrar culpable a la apelante cuando la prueba de cargo no estableció su culpabilidad más allá de duda razonable, en violación al derecho a la presunción de inocencia y el debido proceso de ley.

2. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al admitir en evidencia un documento que no fue autenticado conforme a las Reglas de Evidencia.

3. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al admitir en evidencia del Ministerio Público un documento que no era el original, y fue en inicio por el ministerio público y posteriormente editado por la defensa para que se pareciere al que había provisto la fiscalía.

4. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al no excluir evidencia que no fuera notificada a la defensa de conformidad con la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, en violación a su derecho a un proceso justo y equitativo. Y dejando a la defensa en un estado de indefensión.

5. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al no excluir la evidencia que no fuera notificada a la parte apelante antes del juicio, dejando a nuestra cliente en un estado de indefensión. Y al permitir al agente del orden público testificar sobre trámites y documentos que nunca fueron descubiertos a la defensa.

6. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al no aplicar la presunción específica de prueba adversa conforme la Regla 304 (5) de las de Evidencia.

7. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al determinar que las admisiones hechas por la apelante fueron libres, voluntarias, con conocimiento, cuando la prueba indica lo contrario.

8. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al no excluir las declaraciones o admisiones obtenidas de la apelante por coacción en violación a su derecho constitucional a un debido proceso de ley sin una renuncia válida e inteligente de su derecho constituciona[l] a no incriminarse estando como sospechosa, detenida y bajo interrogatorio.

9. Cometió grave error el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al admitir en evidencia la confesión/admisión prestada por la apelante, por no haber sido prestada consciente e inteligentemente.

10. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al presumir que se hicieron las advertencias a la

apelante sobre la plataforma ATH Móvil cuando no fue incluida en la orden de protección.

Atendido el recurso, el 10 de mayo del año en curso emitimos *Resolución* en la que ordenamos a la apelante a acreditar qué método de reproducción de la prueba oral utilizaría. Esto pues, algunos de sus errores cuestionaban la apreciación de la prueba testifical efectuada por el TPI. En cumplimiento con esto, el 21 de mayo de este año, informó que presentaría una transcripción estipulada de la prueba oral desfilada en el juicio. El 6 de septiembre de 2024, la apelante sometió la transcripción. Luego, el día 24 del mismo mes y año, presentó su *Alegato*. Por su parte, y luego de haber solicitado una breve extensión de término para someter su alegato, el 12 de noviembre de 2024, la Oficina del Procurador General de Puerto Rico compareció en representación del Ministerio Público.

Toda vez que contamos con el beneficio de la comparecencia de ambas partes, los autos originales y la transcripción estipulada, damos por sometido el asunto y procedemos a resolver.

-II-

*A.*

Nuestra Constitución reconoce como imperativo que, en todo proceso criminal, el acusado disfrute de la presunción de inocencia. Art. II, Sec. 11, Const. PR, 1 LPRA, Tomo 1. Como es sabido, para rebatir esta presunción se requiere la presentación de evidencia por parte del Estado que establezca la culpabilidad del acusado más allá de duda razonable. Pueblo v. Meléndez Monserrate, 2024 TSPR 80, 213 DPR _____; Pueblo v. Toro Martínez, 200 DPR 834 (2018). El estado, deberá someter evidencia sobre la existencia de todos los elementos del delito que se imputa, su conexión con la persona acusada y la intención o negligencia criminal de esta. Pueblo v. Resto Laureano, 206 DPR 963 (2021). Lo anterior no implica que la culpabilidad del acusado deba probarse con certeza matemática. Lo que se exige es prueba satisfactoria y suficiente en Derecho que produzca

"certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido." *Íd.* En los casos en los que exista duda razonable acerca de la culpabilidad de la persona imputada, esta será absuelta.[3] De tratarse la interrogante en cuanto a grados de un delito o entre delitos de distinta gravedad, sólo se le podrá condenar del grado inferior o el delito de menor gravedad. Véase, Regla 110 de Procedimiento Criminal, 31 LPRA Ap. II, R. 110.

De otra parte, la Regla 110 de Evidencia dispone que, "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".[4] Es por esta razón que es una norma firmemente establecida que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Pena Rivera v. Pacheco Caraballo, 2024 TSPR 48, 213 DPR ___.

Esta deferencia judicial, está predicada en que los jueces de las salas de instancias están en mejor posición de aquilatar la prueba testifical debido a que estos tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Íd.*, al mencionar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778 (2022) y otros.  La deferencia debida a los foros primarios se extiende tanto a la adjudicación de credibilidad que éstos realizan sobre los testigos que declaran ante sí, como a las determinaciones de hechos que el juzgador de hechos realiza. Pueblo v. Negrón Ramírez, 2024 TSPR 41, 213 DPR ____, al citar a Pueblo v. Toro Martínez, 200 DPR 834 (2018) y otros. Sin embargo, a modo de excepción, los foros apelativos estamos en las mismas condiciones

---

[3] Debe recordarse que existe duda razonable cuando el juzgador siente insatisfacción con la prueba una vez sopesados todos los elementos involucrados en el caso. Pueblo v. Resto Laureano, *supra,* al citar a Pueblo v. Casillas, Torres, 190 DR 398 (2014); Pueblo v. Toro Rosas, 89 DPR 169 (1963); y Pueblo v. Cruz Granados, 116 DPR 3 (1984).
[4] 32 LPRA Ap. VI, R. 110

que el tribunal de instancia para intervenir y apreciar *de novo* la prueba documental que se haya presentado en un juicio. Id., al citar a Díaz García v. Aponte Aponte, 125 DPR 1, 3 (1989).

Es menester señalar que existe error manifiesto cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones alcanzadas por el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Entiéndase pues, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Pena Rivera v. Pacheco Caraballo, *supra*. Por su parte, el concepto de pasión, prejuicio y parcialidad han sido definido como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. Pueblo v. Negrón Ramírez, al mencionar a Ortiz Ortiz v. Medtronic, *supra* y demás casos allí citados.

Aparte de lo arriba consignado, un foro apelativo puede intervenir con las determinaciones de hechos y la apreciación de la prueba si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicarla. A tales efectos, se incurre en abuso de discreción cuando el juez: "(1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".

*B.*

El Artículo 2.8 de la Ley Núm. 54 del 15 de agosto de 1989, dispone lo relacionado al incumplimiento de las órdenes de protección que se emitan a su amparo. En cuanto a esto, el mencionado artículo indica que

cualquier violación a sabiendas de una orden de protección expedida de conformidad con la Ley 54 "será castigada como delito grave de tercer grado en su mitad inferior, disponiéndose que los tribunales vendrán obligados a imponer supervisión electrónica, de concederse cualquier tipo de sentencia suspendida."

C.

El Artículo 2 del Código Penal de Puerto Rico, Ley 146-2012, al regir el principio de legalidad establece que "[n]o se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos." Tal principio, ofrece como garantía la proscripción de: (1) la creación de delitos mediante jurisprudencia o analogía; (2) la aplicación retroactiva de delitos, y (3) la imprecisión en los elementos constitutivos del delito.

En cuanto a la garantía que hace impermisible las leyes que padezcan de vaguedad en los elementos constitutivos de delito, una persona ordinaria debe poder entender razonablemente la conducta prohibida. Pueblo v. Carrillo, 207 DPR 1056 (2021). Por consiguiente, no se formaliza el principio de legalidad si para conocer lo que está vedado es ineludible que la persona realice un esfuerzo hermenéutico propio de juristas. *Íd.*, al citar a Pueblo v. Rivera Rivera, 183 DPR 991, 997 (2011). Entiéndase, pues, que el principio de legalidad "[…] no implica que cada hecho constitutivo de delito deba desprenderse de una simple lectura de la ley, ya que todas las leyes, incluyendo las de índole penal, están sujetas a interpretación. Conforme a ello, ante una duda de qué es lo que constituye delito según determinada disposición penal, el tribunal debe aplicar los principios de hermenéutica correspondientes, lo cual podría resultar en

alcanzar una interpretación restrictiva o extensiva del delito."[5] Al momento de realizar exégesis, los tribunales darán a toda ley penal la interpretación que mejor responda a los propósitos que esta persigue. Pueblo vs. Carrillo, *supra,* al citar el Artículo 13 del Código Penal, 33 LPRA Sec. 5013.

Al analizar la aplicación de un delito a unos hechos, los tribunales no pueden rebasar los contornos razonables de interpretación. Deben ser cuidadosos respecto a penalizar un "'hecho no tipificado como delito por su semejanza con uno tipificado como tal; o admitir un agravante o una gradación específica no enumerada, basándose en sus semejanzas con una enumerada; o imponer una pena no contemplada por la ley por su analogía con una prevista en la ley." *Id.*, a la pág. 1066.

*D.*

En nuestro ordenamiento jurídico, como norma general, la evidencia pertinente es admisible. Sin embargo, cuando aplique alguna de las reglas de exclusión reconocidas o aquellas dispuestas en la Regla 403 de Evidencia, pudiera excluirse evidencia pertinente. Izagas Santos v. Family Drug Center, 182 DPR 463, 466 (2011). La mencionada regla establece qué evidencia pertinente podrá ser excluida cuando su valor probatorio queda sustancialmente superado por el riesgo de causar perjuicio indebido, de causar confusión o de causar desorientación del Jurado; la dilación indebida de los procedimientos o una innecesaria presentación de prueba acumulativa.[6]

Si una parte entiende que el tribunal admitió erróneamente evidencia debe, conforme a la Regla 104 de Evidencia, presentar una objeción oportuna, específica y correcta. En caso de que se trate de una exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y

---

[5] Pueblo v. Carrillo, *supra,* al mencionar a Pueblo v. Negrón Nazario, 191 DPR 720, 739 (2014).
[6] Regla 403 de Evidencia, 32 LPRA Ap. VI R. 403.

hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. Regla 104 de Evidencia, 32 LPRA Ap. VI R. 104.

Pese a lo antes dicho, los tribunales apelativos no revocarán una sentencia por admisión errónea de evidencia, a menos que el error haya sido, "un factor decisivo o sustancial en la sentencia emitida". Regla 105 de Evidencia, 32 LPRA Ap. VI R. 105. Así, si el error se considera benigno o no perjudicial- porque la exclusión de la evidencia no hubiese producido un resultado distinto- se confirma el dictamen a pesar del error. Pueblo v. Santiago Irizarry, 198 DPR 35, 36 (2017) al citar a Izagas Santos v. Family Drug Center, *supra*.

*E.*

Las Reglas de Evidencia regulan en su capítulo X lo concerniente al contenido de escritos, grabaciones y fotografías. A tales efectos, y en cuanto al particular, la Regla 1001 brinda las siguientes definiciones:

(a) **Escritos o grabaciones.** — Consiste en letras, palabras, números, sonidos o sus equivalentes, por medio de escritura manual, maquinilla, en computadora, grabación mecánica o electrónica, micrografía, microfilmación, impresión, fotocopia, fotografía o impulso magnético, u otra forma de compilación de datos.

(b) **Fotografías**. — Incluye la reproducción mediante fotografías, películas de rayos X, películas cinematográficas, videomagnetofónicas, digitales u otras técnicas de reproducción de imágenes.

(c) **Original**. — Original de un escrito o grabación es el escrito o grabación mismo o cualquier contraparte de éstos, siempre que la intención de la persona que los ejecuta o emita sea que éstos tengan el mismo efecto que aquellos. El original de una fotografía incluye su negativo o archivo digital, y cualquier ejemplar positivo obtenido de éste. Es también un original, el impreso legible que refleja con precisión la información que haya sido almacenada o acumulada o producida en computadora o artefacto similar.

(d) **Duplicado**. — Copia o imagen producida por la misma impresión que el original, o por la misma matriz o por medio de fotografía, incluyendo ampliaciones y miniaturas, o por regrabaciones mecánicas, electrónicas o digitales o por reproducciones químicas, digitales o por otras técnicas equivalentes que reproduzcan adecuadamente el original. (énfasis en el original)

Para probar el contenido de un escrito, grabación o fotografía se requiere la presentación del original de éstos.[7] Un duplicado es tan admisible como el original, a menos que surja una genuina controversia sobre la autenticidad del original o que, bajo las circunstancias del caso, sea injusto admitir el duplicado en lugar del original.[8] No obstante lo anterior, a modo de evidencia secundaria, será admisible otra evidencia del contenido de un escrito, grabación o fotografía que no sea el original mismo cuando:

a. El original y el duplicado, si existiera, se han extraviado o destruido, a menos que quien lo propone los haya perdido o destruido de mala fe.
b. El original y el duplicado, si existiera, no pudieron obtenerse por ningún procedimiento judicial disponible ni de ninguna otra manera.
c. El original está en poder de la parte contra quien se ofrece y ésta no lo produce en la vista a pesar de haber sido previamente advertida de que se necesitaría producirlo en la vista.
d. El original no está íntimamente relacionado con las controversias esenciales y resultare inconveniente requerir su presentación.

**-III-**

La apelante agrupa la discusión de sus 10 errores en cinco incisos. En alguno de estos, discute de forma conjunta varias de las faltas señaladas, mientras que en otros atiende señalamientos específicos. Atenderemos pues los errores según fueron agrupados y discutidos por Rosado Báez.

En el primero de los incisos, al discutir su primer señalamiento de error, la apelante ataca la decisión de encontrársele culpable de violentar la orden de protección OPA-2022-028985 expedida a favor de Dimitri José Cordero Mojica y en su contra. Al así hacer, argumenta que la determinación apelada no solo es errada, sino que esta es contraria al principio de legalidad, puesto que la aludida orden no proveyó remedio alguno relacionado a la plataforma de ATH Móvil. Específicamente, plantea lo siguiente:

---

[7] Regla 1002 de Evidencia, 32 LPRA Ap. VI, R. 1002.
[8] Regla 1003 de Evidencia, 32 LPRA Ap. VI, R. 1003.

En el caso de epígrafe existe una orden de protección, el 18 de enero de 2024 se estipuló y se marcó como exhibit 1 por estipulación la orden y su diligenciamiento. (página 20 transcripción) Entre los requerimiento[s] que ordena dicha orden no está la utilización de la plataforma ATH Móvil, esta no es una red social y no podría entenderse por analogía que lo incluye. Tampoco es un mensaje de texto enviado a los números telefónicos personales, de trabajo, de familiares y de amigos del Sr. Cordero Mojica. Tampoco estamos ante correos electrónicos, cartas o facsí[mi]les enviados al Sr. Cordero Mojica.

ATH Móvil es una aplicación de la Compañía Evertec que ofrece el servicio de pagos y transferencias digitales. Esta permite a los usuarios enviar y recibir dinero de manera rápida y sencilla. Esta parte de la red de servicios de EVERTEC.

Es de conocimiento general que esta plataforma es utilizada por cientos de personas con órdenes de protección vigente para enviar pensiones alimentarias, enviar dinero para el pago de utilidades, préstamos y deudas, entre otros. Es por esto que los Tribunal[es] de Primera Instancia, si entienden deben ordenar la prohibición del uso de ATH Móvil, lo incluyen en la orden de protección de forma específica, eso no ocurrió en el presente caso. Entonces estamos ante una conducta que dependiendo del juzgador puede constituir una violación a una orden de protección, pero en otras no. Es necesario que la orden de protección de una notificación a los ciudadanos de cuál es la conducta prohibida para que no ocurran arbitrariedades, asegurando que las leyes sean claras, accesibles y aplicadas de manera consistente. Así también fiscalía tiene un mandato de velar no solo con el fiel cumplimiento de las órdenes de protección. Pero también con la protección de los derechos constitucionales de las personas que se propone imputar delito. Cuando se evalúa un caso sobre violación de orden de protección y se encuentra que no ha sido adecuadamente notificada la parte. Como cuestión de derecho lo que procede es volver a diligenciar la orden y añadir, o con arreglo al derecho solicitar se enmiende con el propósito de que sea correctamente diligenciada la orden.

El Ministerio Público, representado por la Oficina del Procurador General, al responder, cataloga de increíble los argumentos levantados por la apelante en cuanto al silencio que la *Orden de Protección* expedida guarda sobre la aplicación ATH Móvil y el consiguiente reclamo de violación al principio de legalidad. En defensa del veredicto emitido en el caso, expone que la *Orden de Protección* emitida en contra de Rosado Báez contiene un mandato expreso para que, entre otras cosas, esta se abstenga de: acercarse, molestar, intimidar, amenazar o de cualquier otra forma interferir con la parte peticionaria; o sea con el señor Mojica; de realizar llamadas telefónicas y de enviar mensajes de textos a los teléfonos personales del perjudicado; y de enviarle correos electrónicos. Ante este lenguaje, afirmativamente el Ministerio Público plantea que, si bien el documento expedido no menciona

la aplicación de ATH Móvil, el utilizar dicha plataforma para intentar contactar al señor Mojica es una conducta englobada en la orden de no interferir con él de cualquier otra forma. Por último, señala que el argumento planteado por la apelante en cuanto a que la aplicación de ATH Móvil se utiliza diariamente por cientos de personas con órdenes de protección vigente para enviar pensiones alimentarias de forma alguna guarda relación con los actos por los que se le acusó de violar la orden de protección.

Estamos de acuerdo con el Ministerio Público. Tal como correctamente cita el Estado, y arriba incluimos, el ejercicio de interpretar una ley debe efectuarse de forma tal que dicha exégesis responda de la mejor manera a los propósitos que esta persigue.[9] En consideración a ello, resolvemos que, contrario a lo que argumenta la apelante en su primer señalamiento de error, la decisión apelada no infringe el principio de legalidad. Veamos.

La Ley 54 fue promulgada con el propósito de establecer una serie de medidas dirigidas a eludir y combatir la violencia doméstica en Puerto Rico.[10] A los fines de cumplir con dicha encomienda, el discutido estatuto establece un amplio esquema regulador que incluye la imposición de sanciones penales y el remedio civil de la expedición de órdenes de protección. Pueblo v. Figueroa Santana, 154 DPR 787, 727 (2001).

Según el estatuto define, una orden de protección es todo mandato expedido por escrito bajo el sello de un tribunal, **en la cual se dictan las medidas a un agresor para que se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutivos de violencia doméstica**.[11] De otra parte, sobre qué constituye violencia doméstica, la Ley 54 define esta conducta como "un patrón de conducta constante de empleo de fuerza

---

[9] Véase, Pueblo v. Carrillo, *supra.*
[10] Véase párrafo introductorio de la Ley 54.
[11] 8 LPRA Sección 602 (i).

física o violencia psicológica, intimidación **o persecución** contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional."[12] (Énfasis suplido).

Mediante la orden de protección emitida contra la apelante el tribunal le ordenó a:

- **Abstenerse** de acercarse, molestar, intimidar, amenazar **o de cualquier otra forma interferir con la parte peticionaria**;
- Abstenerse de visitar y/o acercarse a:
  - El hogar de la parte peticionaria y sus alrededores
  - El hogar de los familiares de la parte peticionaria y sus alrededores
  - El lugar de trabajo o el negocio de la parte peticionaria y sus alrededores
  - El lugar de trabajo o el negocio de los familiares de la parte peticionaria o sus alrededores
  - El vehículo de motor que utiliza la parte peticionaria
- **Abstenerse** de realizar llamadas telefónicas **y de enviar mensajes de texto** o de voz **a los números telefónicos personales**, de trabajo, de familiares y de amigos(as) **de la parte peticionaria**.
- Abstenerse de enviar correos electrónicos, cartas o facsímiles a la parte peticionaria
- Abstenerse de tener contacto o interferir con la parte peticionaria por cualquier red social tales como: Facebook, Twitter, MySpace, entre otras.
- Entregar a la Policía de Puerto Rico cualquier arma de fuego que le pertenezca o que tenga bajo su control. (Énfasis dado)

Indisputablemente, al leer las conductas que el tribunal le ordenó a Rosado Báez debía evitar- particularmente aquellas que arriba destacamos en negrillas- queda meridianamente claro que mediante estas se le mandó a evitar tener **cualquier contacto con el perjudicado de cualquier forma**. La mera ausencia de una mención específica en cuanto a la aplicación de ATH Móvil es insuficiente para concluir que la apelante desconocía que

---

[12] 8 LPRA Sección 602 (q).

entre aquellas cosas que no debía hacer, estaba el contactar al señor Mojica a través de esta.

No solo su pretensión al así sostener es absurda, sino que ignora las determinaciones de hechos formulada en su día por la Sala Municipal del Tribunal de Bayamón al expedir la *Orden de Protección*. Allí, el tribunal determinó que el señor Mojica tuvo una relación informal con la apelante; **que luego de que el perjudicado decidió terminar la relación la apelante insistía en contactarlo lo que provocó que fuera bloqueada de todas las plataformas de comunicación**; que, pese a ello, **Rosado Báez utilizó <u>la plataforma ATH Móvil para seguir enviándole mensajes</u>; y que esta se presentó en casa del señor Mojica y de sus familiares sin autorización**. (Énfasis nuestro). (Véase página 3 del apéndice de la parte apelante)

De las antes mencionadas determinaciones de hechos surge que uno de los actos realizados por la apelante que llevó al perjudicado a buscar la protección del tribunal es precisamente la misma conducta que luego de haberse emitido la *Orden de Protección* repitió. Ciertamente, el mandato allí contenido para que la apelante se abstuviera de interferir de cualquier forma con el señor Mojica derrota los planteamientos de Rosado Báez dirigidos a reclamar una violación al principio de legalidad. Sostener que cientos de personas con órdenes de protección utilizan la plataforma ATH Móvil para transferir el pago de pensiones alimentarias, utilidades o préstamos no justifica su conducta. Al final de cuenta, de la prueba desfilada y creída por el tribunal es claro que ese no era el propósito para el cual la apelante usó dicha plataforma. Es por todo lo aquí expuesto que resolvemos que el primer error señalado no fue cometido.

Atendemos ahora el inciso *B* de la Discusión de los Errores Planteados de la apelante. Allí, discute de forma conjunta sus señalamientos de error 2, 3 y 4, mediante los cuales impugna la admisión de un *Subpoena* dirigido a la empresa EVERTEC y el resultado de este. Su

ataque descansa en que el documento no fue producido oportunamente como parte del descubrimiento, sino revelado el día del Juicio. En su recurso Rosado Báez expone que, aunque el Ministerio Público admitió en el Juicio haber incumplido con la Regla 95 de Procedimiento Criminal y alegar que el impugnado documento no sería utilizado, sorpresivamente durante el testimonio del Agente Carlos Pérez Albino, realizó preguntas sobre las gestiones para solicitar el *subpoena*, su diligenciamiento y si obtuvo un resultado.

A su vez, y sobre el mismo documento, en su discusión la apelante reclama que dado que el Ministerio Público, ante las objeciones de la defensa, determinó no utilizarlo, debió aplicarse la aplicación de prueba adversa autorizada por la Regla 304 (5) de Evidencia, 32 LPRA Ap. VI R. 304(5). Indica que así le fue solicitado al tribunal durante el Juicio en su Fondo y que la denegatoria de su solicitud constituyó un error.

Acerca de estos planteamientos, el Procurador General niega la admisión del *subpoena* como evidencia y de los resultados de este, razón por la cual también rechaza la aplicación de presunción adversa reclamada por la apelante en cuanto al documento. Asimismo, añade que las instrucciones particulares brindadas por el juzgador de hechos al agente hacen correcta la determinación judicial de permitirle declarar en cuanto al tema, pues su testimonio estuvo limitado a las gestiones que hizo para obtener el *subpoena* y a qué tuvo resultado.

Estudiada la transcripción estipulada sometida en el caso, concluimos que los errores 2, 3 y 4 discutidos conjuntamente por la apelante no se cometieron.

En primer lugar, la apelante impugna la admisión de un documento que nunca fue admitido como prueba. Según surge de la transcripción estipulada, al comienzo del Juico el Ministerio Público informó al tribunal haberle hecho entrega a la defensa de los mensajes de textos a través de la

aplicación ATH Móvil. Acto seguido, la representación legal de la apelante manifestó que la Fiscal reconocía que no podría utilizar dichos documentos como evidencia, quien a su vez indicó que la entrega del documento respondió al deber continuo del Ministerio Público de notificar evidencia nueva. Escuchada esta corta argumentación el juzgador de hechos manifestó que, como se había indicado, la evidencia no podría ser utilizada ante los procesos del juicio.[13] **Como puede apreciarse, el documento cuya admisión Rosado Báez ataca, ni siquiera fue admitido como evidencia.**

Segundo, la lectura de la transcripción estipulada nos permite apreciar que el testimonio del agente fue limitado por el juzgador de los hechos. A continuación, reproducimos las incidencias más importantes acaecidas durante el Juicio que así nos permite concluir.

| | | |
|---|---|---|
| P | : | Le pregunto agente qué otra gestión, si alguna, usted hizo relacionada a este caso. |
| R | : | Bueno relacionada a este caso yo "subpoena" al a compañía ATH Móvil, Evertec. |
| Lcda. Maritza Torres | : | Ahí vamos a tener reparo, honorable juez, porque a esta abogada no se le ha entregado ningún "subpoena" ni ningún documento relacionado a eso. Tampoco surge de los documentos que nos entregaron. |
| Sra. Fiscal | : | Juez, no estaríamos entrando en los documentos. Pero el agente puede hablar de su investigación. |
| Lcda. Maritza Torres | : | Honorable, con mucho respeto, eso sería evidencia sorpresiva. Porque aquí se entregaron unos informes que fueron confeccionados por el agente, que son la base para la preparación del abogado para brindar un asesoramiento y una defensa adecuada y eficaz. Y eso que está diciendo la compañera no nos fue entregado ni los "subpoena", ni las manifestaciones de esa supuesta investigación, así que provocaría un fracaso a la justicia y nos dejaría en un total estado de indefensión el permitirse que se hable de algo que nosotros ni siquiera sabíamos. |

---

[13] *Transcripción de Juicio en su Fondo del 18 de enero de 2004*, página 21; líneas 1-24.

| | | |
|---|---|---|
| Sra. Fiscal | : | Juez, eso no sería evidencia sorpresiva toda vez que la compañera desde el principio del caso tenía conocimiento la existencia de esos mensajes a través de la aplicación ATH Móvil. |
| Honorable Juez | : | Pero de la gestión del "subpoena" es lo que hay planteado. |
| Sra. Fiscal | : | Es parte del trabajo del… |
| Honorable Juez | : | Hasta ahí el agente hizo gestiones "subpoenar". Si no se le entregó a la defensa el producto de ese "subpoena" pues no lo puede utilizar. |
| Sra. Fiscal | : | por eso, Juez, no podemos utilizar el producto de la "subpoena" pero el testimonio de la investigación del agente no tiene nada que ver con el documento. El agente puede declarar sobre sus gestiones. Su testimonio… |
| Lcda. Maritza Torres | : | Sorpresivo. |
| Sra. Fiscal | : | No sorpresivo porque la compañera tiene conocimiento de esos mensajes desde vista preliminar. |
| Honorable Juez | : | No, no, no, conocimiento de la gestión del "subpoena". |
| […] | | |
| Honorable Juez | : | Luego de haber examinado el expediente judicial y las correspondientes mociones el tribunal se mantiene en su "ruling". El agente puede testificar únicamente con relación a que hizo una gestión de "subpoena", que tuvo un resultado, pero no el contenido de esos mismos. Hasta ahí. Y el Ministerio Público sí tiene un deber de notificar a la defensa si iba a hacer es agestión de "subpoena". Adelante.[14] |

Como se desprende de la porción transcrita, el juzgador de hechos limitó el contenido del testimonio del agente a que este indicara si había realizado una gestión de "subpoena" y si la misma tuvo algún resultado. Mientras, prohibió cualquier declaración en cuanto al resultado de las gestiones y su contenido. Al así hacerlo, el tribunal hizo uso de la herramienta provista por la Regla 107 de Evidencia, 32 LPRA Ap. VI, R.

---

[14] *Íd.*, pág. 102, línea 2 a pág. 104, línea 1; pág. 109, líneas 1-9.

107.[15]    Por todo esto, y según ya adelantamos, resolvemos que el foro primario no cometió los errores 2, 3 y 4 señalados.

Igual conclusión alcanzamos en cuanto a los señalamientos de error 5, 6 y 7 que la apelante discute en el inciso C de su alegato. En la redacción de estos, cuestiona la admisibilidad de ciertas admisiones de su parte obtenidas por el agente Pérez Albino. A tales efectos, asevera que la prueba demuestra que estas no fueron hechas libre y voluntariamente y que las mismas se obtuvieron por coacción y violación de su derecho a no auto incriminarse. El planteamiento levantado por la apelante al discutir sus errores es el que a continuación transcribimos:

> Durante su testimonio el agente Carlos Pérez Albino declaró en varias ocasiones que el era el que le indicaba a la apelante que tenía que marcar, donde tenía que iniciar y donde firmar en el documento de advertencias. Así mismo, durante su testimonio alegó que le indicó a la apelante que marcara que renunciaba voluntariamente a sus derechos, pero desconoc[e] porque no lo marcó. La apelante marcó que **NO renunciaba a sus derechos**, a pesar de esto el agente alega que esta le hizo unas admisiones.

> En su argumentación final el Ministerio Público acepta que **erró** el agente Pérez Albino al no poner marcar en las advertencias de que la apelante renunció voluntariamente a sus derechos. (Página 162, línea 17-25 transcripción).

> Más adelante la fiscal acerca de la nota del agente sobre la alegada renuncia:

> "Que todos sabemos aquí, los que hemos trabajado con estos casos, que los agentes hacen sus notas a manuscritos, notas que tiene la defensa; y posteriormente es que pasan eso al sistema y el sistema registra la fecha en que el agente redactó esas notas. No necesariamente implica que no es la misma fecha de las advertencias." (página 163, línea 10-16 transcripción)

> Las expresiones antes transcritas resultan confusas, ¿el sistema registra la fecha en que el agente redactó esas notas? Daría la impresión de que sí y por consiguiente no se realizó el día que alegadamente le hicieron las advertencias a la apelante.

> [La] contradicción y aceptaciones de error del Ministerio Público deben mover a este Honorable Tribunal Apelativo a no aplicar el estándar de deferencia de la determinación del foro apelado, y concluir que dicho foro [erró] al admitir en evidencia las alegadas admisiones de la apelante.

---

[15] La citada regla lee: Cuando determinada evidencia sea admisible en cuanto a una parte o para un propósito, y sea inadmisible en cuanto a otra parte o para otro propósito, el tribunal, previa solicitud al efecto, limitará la admisibilidad de esa evidencia a su alcance apropiado e instruirá inmediatamente sobre ello al jurado, de haberlo.

En respuesta a estos argumentos, el Procurador General expone que la simple premisa sometida por la apelante, más que insensata, es contraria a derecho. Así, señala que del testimonio del agente Pérez Albino se desprende que este le leyó las advertencias legales que el ordenamiento jurídico vigente exige. También riposta que dicha declaración no permite concluir que la apelante firmó el Formulario PPR-615.4- en el que se describen las advertencias- bajo coacción. En contrario, establece que durante su testimonio el agente Pérez Albino declaró que luego de que se le habían hecho las advertencias legales y esta había firmado el antes mencionado formulario, la apelante manifestó que quería declarar y admitió haber enviado los mensajes en cuestión por ATH Móvil.

De igual forma, el Procurador General señala que el testimonio del agente Pérez Albino no fue impugnado, mereciéndole entera credibilidad al juzgador de hechos. Por consiguiente, y, toda vez que el ejercicio apreciativo de los tribunales de instancia merece nuestra deferencia, reclama que la apreciación realizada por el tribunal primario debe sostenerse.

Hemos estudiado el testimonio del agente Pérez Albino contenido en la transcripción estipulada. Un detenido avalúo del mismo, en contraposición a los planteamientos levantados por la apelante en búsqueda de la exclusión de sus admisiones es lo que nos lleva a concluir que los errores 5, 6 y 7 señalados por ella no fueron cometidos.

De entrada, es menester señalar que la declaración del Agente Pérez Albino no consta de las expresiones frugales señaladas por la apelante, limitándose a exponer que él le indicaba qué tenía que marcar, dónde tenía que iniciar y dónde firmar en el documento de advertencias. Por el contrario, durante su testimonio, el Agente Pérez Albino manifestó que al entrar a la celda donde se encontraba la apelante le indicó que tenía que hacerle las advertencias de ley, que le dio la opción para que ella las leyera

o que fuera él, escogiendo ella la segunda opción. También, al declarar, el agente manifestó que le mencionó e hizo hincapié en que tenía derecho a permanecer callada, a no declarar, que todo lo que dijera podía ser utilizado en su contra y sobre su derecho a tener un abogado y de no contar con dinero para uno, pues el Estado se lo proveería.[16] El agente entonces declaró que tales advertencias fueron leídas del Formulario PPR-615.4 y que al leerlas, le indicó que si estaba de acuerdo, si aceptaba y entendía las advertencias y cada uno de sus incisos que así lo iniciara en el documento. Asimismo, indicó que la apelante manifestó entender cada uno de los incisos y que, al preguntarle si deseaba declarar, ella respondió que sí.[17]

Además de lo antes consignado, al agente Pérez Albino declaró que una vez Rosado Báez manifiesta interés en declarar, le notifica en el proceso de investigación que está arrestada por una querella de violencia doméstica y que se había presentado una querella por violación a dicha orden. Según el agente, la apelante le comentó que sí, que había enviado unos mensajes de texto al señor Dimitri a través de la plataforma de ATH Móvil y que lo había hecho por que se había presentado a la residencia del hermano de éste, quien le causó daños a la carrocería de su vehículo.[18]

La admisibilidad de las admisiones efectuadas por la apelante respondió a la credibilidad que el testimonio del agente le mereció al juzgador de hechos. La apelante pretende derrotar el valor probatorio aplicado sin hacer referencia específica a alguna porción en su contenido que lo impugne y limitándose a citar restrictiva y convenientemente ciertas manifestaciones hechas por la Fiscal durante los argumentos finales. Olvida, sin embargo, que estas no constituyen prueba. Ciertamente, tal limitado y débil argumento es insuficiente para evidenciar error manifiesto,

---

[16] Transcripción Estipulada del Juicio en su Fondo del 18 de enero de 2024, página 93, línea 17 a página 94, línea 23.
[17] *Íd.*, página 94, línea 24 a página 96, línea 11.
[18] *Íd.*, página 96, línea 12 a pág. 97, línea 12.

prejuicio, parcialidad o pasión de forma tal que pueda justificarse nuestra intervención con el ejercicio evaluativo que el TPI hizo de la prueba. Por esta razón, hoy sostenemos la admisibilidad de la confesión hecha por la apelante al agente Pérez Albino.

Atendemos ahora la discusión conjunta que la apelante hizo de sus errores 8 y 9. En estos, ataca la admisibilidad de la captura de pantalla (*screenshot*) de 3 correos electrónicos recibidos por el señor Dimitri cuyo remitente alegadamente era ATH Móvil. Para ello, reclama que el Ministerio Público falló en someter prueba que autenticara los documentos sometidos y admitidos.

En oposición a tal postura, el Procurador General argumenta que las capturas de pantallas admitidas en evidencia ilustran lo ya declarado por el perjudicado en cuanto a que luego de haberse emitido una orden de protección, la apelante incumplió esta al enviarle tres mensajes por la aplicación ATH Móvil, que estos mensajes los recibió a su correo electrónico y que imprimió los mismos. Asevera pues, que los documentos admitidos tratan de prueba ilustrativa, sometida para hacer más comprensible lo declarado por el perjudicado que fue autenticada por él mismo durante el Juicio y, por consiguiente, admisible.[19] También destaca que, en sus argumentos, la apelante no demostró que la exclusión de dicha prueba es suficiente para provocar la revocación del fallo de culpabilidad. Tiene razón.

La lectura de la transcripción estipulada del juicio nos permite apreciar que, al declarar, el señor Dimitri estableció la existencia de una orden de protección que tenía contra la apelante;[20] que, en dicha orden, como parte de las prohibiciones estaba que ella no podía tener

---

[19] La autenticidad de la evidencia descansa en que conforme la Regla 90, el requisito de autenticación se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene y que ello puede hacerse a través del testimonio por testigo con conocimiento, en este caso el señor Dimitri como recipiente de los correos electrónicos.

[20] *Íd.*, pág. 26, líneas 4-24.

comunicación con él;[21] que el 8 de julio de 2023, recibió unos mensajes a través de ATH Móvil que venían de Rosado Báez;[22] que fueron tres y que estos leían: "Necesito hablar contigo". "Necesito que retires la orden" y el tercero "decía algo de cobrar unos daños, tu hermano, algo así.".[23] Asimismo, mediante su testimonio este manifestó que cuando vio los mensajes, los que recibe al correo electrónico registrado en la cuenta de ATH Móvil, los imprimió, fue al cuartel y los llevó como evidencia de la comunicación.[24] De igual forma, luego de así ya haber declarado, al ser confrontado con los documentos en controversia, los reconoció por que tenían el nombre de la persona con la que tenía la orden de protección o por el nombre y el número de teléfono que aparecía. En cuanto a cada uno de estos, al preguntársele como comparaban con los entregados a la Policía, respondía que eran los mismos.[25]

Como se observa, los correos electrónicos cuya admisibilidad la apelante impugna, fueron autenticados por el perjudicado durante su testimonio. Por tanto, su admisibilidad fue correcta. Deseamos añadir que, aun cuando hoy resolviéramos que estos documentos fueron erróneamente admitidos, la apelante no presentó en su alegato planteamientos adecuados para evidenciar que la admisión constituyó un error perjudicial. Por el contrario, se limitó someramente a exponer que "[l]a admisión de los tres alegados correos electrónicos es un error extraordinario que tiene un efecto decisivo y sustancial en la sentencia apelada.", sin siquiera abundar. La totalidad de la prueba sometida ante la consideración del tribunal no lleva a estimar que así sea, por lo que no se cometieron los erros 8 y 9 señalados por la apelante.

---

[21] *Íd.*, pág. 27, líneas 4-10.
[22] *Íd.*, pág. 24, líneas 21-25.
[23] *Íd.*, pág. 30, líneas 10-13.
[24] *Íd.*, pág. 30, línea 16 a la pág. 31, línea 5.
[25] *Íd.*, pág. 35, línea 35 a la pág. 39, línea 6.

Nos restaría, resolver si el Ministerio Público estableció la culpabilidad de la apelante más allá de duda razonable. La apelante sostiene en su última discusión que no. A tales efectos, señala que la acusación sometida en su contra no reclama que esta hubiera incurrido en cualquiera de las actividades que le fueron expresamente prohibidas. A su vez, señala que no es hasta la argumentación final del Ministerio Público que por primera vez se le imputa interferir con el perjudicado y se solicita al tribunal que infiera que la conducta imputada está comprendida dentro de dicho concepto.

Notamos que la discusión que la apelante somete repite el reclamo sometido en la discusión de su primer error en cuanto a que la *Orden de Protección* guarda silencio en cuanto a la plataforma de ATH Móvil y que, por consiguiente, falló el tribunal al declararle culpable de violación al artículo 2.8 de la Ley 54. Habiéndose ya atendido este asunto, nada hay que disponer. En la alternativa, y por tal razón, el décimo error señalado no fue cometido.

**-IV-**

Por los fundamentos antes esbozados, se **confirma** el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones